UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSE SWANSBROUGH,

   Petitioner,

            CASE NO. 2:08-CV-11275
v.            JUDGE DAVID M. LAWSON
            MAGISTRATE JUDGE PAUL J. KOMIVES

SHIRLEE A. HARRY,

   Respondent.[1]
_____/

**REPORT AND RECOMMENDATION**

I.  RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus.

II.  REPORT:

A. *Procedural History*

  1.  Petitioner Jesse Swansbrough is a state prisoner, currently confined at the

Muskegon Correctional Facility in Muskegon, Michigan.

  2.  In February 2004, petitioner was convicted of armed robbery, MICH. COMP. LAWS

§ 750.529, and felony firearm, MICH. COMP. LAWS § 750.227b, following a jury trial in the

Monroe County Circuit Court.  On April 19, 2004, he was sentenced to a term of 210 to 480

months' imprisonment on the armed robbery conviction and a consecutive 2-year term of

imprisonment on the felony-firearm conviction.

_____

  [1] By Order entered this date, Shirlee A. Harry has been substituted in place of Millicent
Warren as the proper respondent in this action.

1

3.       Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

I.       THE TRIAL COURT ERRED IN VIOLATION OF APPELLANT'S
         SIXTH AMENDMENT RIGHT TO PRESENT WITNESSES IN HIS
         DEFENSE WHEN IT RULED THAT APPELLANT COULD NOT
         CALL A WITNESS OR OFFER MEDICAL RECORDS (A JAIL NURSE
         WHO HAD MEDICAL RECORDS AND TESTIMONY OF
         APPELLANT'S PRIOR FOOT INJURY) BECAUSE THE WITNESS
         AND THE RECORDS WERE NOT LISTED ON A WITNESS LIST
         THAT HAD TO BE FILED WITH THE COURT AND EXCHANGED
         WITH THE PROSECUTOR AS ORDERED BY THE TRIAL COURT'S
         CRIMINAL PRE-TRIAL AND SCHEDULING ORDER.

II.      THE TRIAL COURT ERRED IN FAILING TO GIVE PROPER AND
         TIMELY REQUEST BY THE DEFENDANT FOR INSTRUCTIONS ON
         LESSER INCLUDED OFFENSES OF FELONIOUS ASSAULT AND
         ATTEMPTED ROBBERY ARMED.

III.     APPELLANT WAS SENTENCED CONTRARY TO HIS SIXTH AND
         FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED
         STATES CONSTITUTION TO HAVE A JURY DETERMINE
         BEYOND A REASONABLE DOUBT ALL FACTS CONSIDERED
         FOR SENTENCING.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and

sentence. *See People v. Swansbrough*, No. 271126, 2007 WL 2684067 (Mich. Ct. App.) (per

curiam).

4.       Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan

Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a

standard order.  *See People v. Swansbrough*, 480 Mich. 1013, 743 N.W.2d 43 (2007).

5.       Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas

corpus on July 21, 2006.  As grounds for the writ of habeas corpus, he raises the three claims that

he raised in the state courts.

2

6.          Respondent filed her answer on September 30, 2008.   She contends that
petitioner's claims are either without merit or not cognizable on habeas review.

7.          Petitioner filed a reply to respondent's answer on November 8, 2008.

B.     *Factual Background Underlying Petitioner's Conviction*

The following facts were set forth by the Michigan Court of Appeals:

> Defendant was convicted of robbing Tammy Leach on June 23, 2003.  A
> 12-year-old neighbor testified that, at about 11:30 p.m., she saw
> defendant and a second man, whom she could not identify, walk past her
> home toward Leach's townhouse.  Defendant appeared to be holding
> something near his waistband underneath his coat.  Leach and Norma
> Ambert testified that they were in Leach's kitchen when defendant and
> another man, whom they could not identify because he "was covered"
> with a hooded sweatshirt, came into the house and directed them into the
> living room at gunpoint.  Defendant grabbed Leach by the hair and
> forced her facedown onto the floor.  Ambert and Leach's four-year-old
> granddaughter were next to Leach on the floor.  Defendant struck Leach
> in the back of the head and yelled, "Bitch, where's the money?"  Leach
> responded that there was money in her purse.  Defendant remained in the
> living room "making sure they didn't move," while the second man
> searched the house.  During the robbery, Leach's 14-year-old daughter
> came home.  The men took her into the living room where she was
> forced to lie on the floor next to the others.  Leach's daughter identified
> defendant and Shannon Ward as the perpetrators, although she could
> only see a portion of Ward's face.
>
> After a brief time, the two men left.  Leach's 22-year-old son testified
> that as he pulled into a parking spot in the complex, he saw defendant
> holding a gun and a second person who could have been Ward "trotting"
> on a neighbor's lawn.  When Leach's son entered the townhouse, the
> women and children were on the floor and hysterical.  The police arrived
> and observed a lump on the back of Leach's head and swelling on the
> side of Ambert's face.  Leach was robbed of $100, a cordless telephone,
> and jewelry.
>
> At trial, defendant denied going to Leach's townhouse and robbing
> Leach.  He testified that on June 23, 2003, he was with a friend, Mitchell
> Crisp, attending various parties from about 10:30 p.m. until 1:00 a.m.
> Crisp confirmed that on June 23, 2003, he and defendant were together

3

from 10:00 p.m. until midnight or 1:00 a.m. Crisp acknowledged that although he and defendant are close friends, he never reported to the police that defendant was with him during the time of the robbery. Defendant also testified that on the day of the incident he had difficulty walking because he fractured his foot in mid-June and the cast was removed on June 22, 2003. Ward testified that he took defendant to the hospital in early June after he fractured his foot and that his foot was put in a cast. Crisp testified that on June 23, 2003, defendant was "limping bad." The arresting officer testified that when defendant was arrested he "had a limp" but "was able to walk."

Swansbrough, 2007 WL2684067 at 1.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed

by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27

(1997). Amongst other amendments, the AEDPA amended the substantive standards for

granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

4

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

2:08-cv-11275-DML-PJK   Doc # 13   Filed 08/10/09   Pg 6 of 15   Pg ID 805

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Defense Claim*

1.    *Clearly Established Law*

Although the Constitution does not explicitly provide a criminal defendant with the right to "present a defense," the Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law. Implicit in these provisions is the right to present a meaningful defense. As the Supreme Court has recognized, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to

6

offer testimony is thus grounded in the Sixth Amendment." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). Further, the Court has noted that "[t]his right is a fundamental element of due process of law," *Washington*, 388 U.S. at 19, and that "[f]ew rights are more fundamental[.]" *Taylor* 484 U.S. at 408. Although the right to present a defense is fundamental, it is not absolute. Thus, the right must yield to other constitutional rights, *see e.g., United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."), or to other legitimate demands of the criminal justice system, *see United States v. Scheffer*, 523 U.S. 303, 308 (1998).

To constitute a denial of the right to present a defense, a trial court's exclusion of evidence must "infringe[] upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315). Thus, "[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Schriver*, 255 F.3d 45, 47 (2d. Cir. 2001)) (alterations by quoting court). In other words, application of the rules of evidence constitute a denial of the right to present a defense only where it "significantly undermine[s] fundamental elements of the accused's defense," *Scheffer*, 523 U.S. at 315 – that is, where the application of the evidentiary rules "infringe[s] upon a weighty interest of the

7

accused." *Scheffer*, 523 U.S. at 308.

    2.      *Analysis*

Petitioner contends that his right to present a defense was infringed upon because he was not allowed to call as a witness a jail nurse who examined petitioner's injury.  He also claims that the trial court's refusal to admit into evidence his medical records is an infringement upon his right to present a defense.  Both of these arguments are without merit because the refusals did not "significantly undermine fundamental elements of the accused's defense."  *Scheffer*, 523 U.S. at 315.

Petitioner's foot had been injured prior to the incident that occurred on June 23, 2003. When he was examined in jail after his arrest, it was confirmed by x-ray that his ankle was broken.  He claims that this fact would put his participation in the crime in doubt because nobody mentioned that the person they saw was limping or showing any difficulty walking or running away from the scene.  This argument fails, however, due to the fact that the injury petitioner had before the robbery was to his foot, and the injury that was confirmed in the hospital was to his ankle.  There is no evidence that this was the same injury.  In addition, nobody claimed to see petitioner "running" away from the scene.  Darnell Leach said that he saw petitioner "trotting" away.  Even if petitioner's foot or ankle was injured at the time, this would not necessarily prevent him from trotting away from the scene.  Finally, four different people positively identified petitioner, who was familiar to them, as being one of the two men who committed the armed robbery.  All of these facts show that the exclusion of the witness and the medical records in the trial court did not "significantly undermine fundamental elements of the accused's defense."  *Id.*  Accordingly, the court should deny petitioner's request for habeas relief on this

8

claim.

E.    *Lesser Included Offense Instructions Claim*

Petitioner's next claim is that the jury should have been instructed on attempted armed

robbery and felonious assault.  He contends that these are lesser included offenses of the acts

with which he was charged.  Although the Eighth Amendment and the Due Process Clause

require that a trial court instruct the jury on lesser included offenses in the context of a capital

case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (trial court required to instruct *sua*

*sponte* on lesser included offenses where the failure to do so would result in the jury being given

an "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the

Constitution does not require a lesser-included offense instruction in non-capital cases."

*Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001).  As the Sixth Circuit has noted, even

where a lesser offense instruction is requested, the failure of a court to instruct on a lesser

included or cognate offense in a non-capital case is generally "not an error of such magnitude to

be cognizable in federal habeas corpus review."  *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir.

1990) (en banc); *see also, Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002).  At a minimum, there is

no clearly established Supreme Court law which requires the giving of a requested lesser offense

instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1).  *See*

WL 1657410, at *2 (E.D. Mich. June 7, 2007) (Cohn, J.); *Adams v. Smith*, 280 F. Supp. 2d 704,

717 (E.D. Mich. 2003) (Tarnow, J.).  Thus, the Michigan Court of Appeals's resolution of this

claim was not contrary to, or an unreasonable application of, clearly established federal law, and

petitioner is therefore not entitled to habeas relief on this claim.

F.    *Sentencing Claim*

9

Petitioner contends that his sentence violates the rule of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines.  The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed.  The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt.  Two separate majorities formed the Court's decision.  Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*.  Noting that there was no difference

10

of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id.* at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*.   A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue.   The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory.  *See id.* at 245.   Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines, his sentence violates *Blakely* and *Apprendi*.   The Court should conclude that petitioner is not entitled to habeas relief on this claim.   Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*.   Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence.   The maximum sentence is not determined by the trial judge but is set by law.  *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8.   "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790.   Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,*

11

469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS §

769.34(2)).   Under Michigan law, the trial judge sets the minimum sentence, but can never

exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

   *Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty

which is authorized by a jury's findings or a defendant's plea: if some additional factor increases

the defendant's penalty beyond that which could be imposed solely on the basis of the jury's

findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a

reasonable doubt (or be themselves pleaded to by a defendant).   As explained above, unlike the

guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the

minimum portion of a defendant's indeterminate sentence.   The maximum is, in every case, the

statutory maximum authorized by law.   *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286

n.14; MICH. COMP. LAWS § 769.8. Petitioner's convictions on the armed robbery charges,

therefore, contained all of the factual findings necessary to impose the statutory maximum on

those charges.   *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power

to impose a sentence is always derived from the jury's verdict, because the 'maximum-

minimum' sentence will always fall within the range authorized by the jury's verdict.").

   This being the case, petitioner's sentence did not violate *Blakely* even though the trial

court made additional factual findings in imposing the minimum term of petitioner's

imprisonment.   The Supreme Court has repeatedly made clear that the *Apprendi* rule is

concerned only with the maximum sentence which is authorized by a jury's verdict or a

defendant's plea.   As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545

(2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights.  The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557.  This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury.  For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*.  Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former.  This argument is flawed on a number of levels.  First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power.  It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury.  Indeterminate sentencing does not do so.  It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty.  Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion.  But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment.  *See Bellamy v. Curtin*, No. 1:06-CV-599, 2007 WL 527988, at *4 (W.D. Mich. Feb. 14, 2007); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No.

2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Toothman v. Davis*, No. 05-CV-74561, 2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.   Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:8/10/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 10, 2009.

s/Eddrey Butts
Case Manager

15